UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SENIORLINK INCORPORATED, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 19-_____ |
| BETH LANDRY, | ) ) ) |
| Defendant. | ) ) |

**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff Seniorlink Incorporated, for its Complaint for Injunctive Relief and Damages against Defendant Beth Landry, hereby states and alleges the following:

**INTRODUCTION**

1. Seniorlink brings this claim against Landry seeking injunctive relief and damages for her breach of her obligation under the *Confidentiality, Non-Competition, Non-Solicitation, and Inventions Agreement* ("Non-Solicitation Agreement"). As set forth below, Landry has already influenced a process that has led to the departure of one Seniorlink employee. Landry has also refused to provide Seniorlink with adequate assurances that she will not commit additional breaches. Seniorlink also seeks damages for Landry's breach of *Separation Agreement and Release* ("Separation Agreement") arising from Landry's influencing the departure of a Seniorlink employee.

**Parties, Jurisdiction and Venue**

2. Seniorlink is a Delaware corporation with its principal place of business located in Massachusetts.

3.      Landry is an individual who is a citizen of Texas residing at 54 Stillmeadow Drive, The Hills, Texas 78738.

4.      Jurisdiction over this matter arises under 28 U.S.C. § 1332 (diversity of citizenship) and 28 U.S.C. § 1367 (supplemental jurisdiction).  The amount in controversy exceeds $75,000, exclusive of interest and costs.  Personal jurisdiction exists over Landry because she has consented to jurisdiction in the United States District Court, District of Massachusetts, in the Non-Solicitation Agreement.

5.      Venue is proper in this Judicial District under 28 U.S.C. § 1391(b)(2), because a substantial part of the harm caused to Seniorlink by Landry's conduct arises in Massachusetts and Landry consented to venue in this Court in the Non-Solicitation Agreement.

## FACTS

### Seniorlink's Business and Effort to Protect Confidential Commercial Information

6.      Seniorlink is a healthcare and technology company that builds care collaboration solutions which combine human touch and technology to integrate and activate family caregivers, supported by care teams, including case managers, care providers, and patients, resulting in high-quality, person-centered care and improved outcomes at a lower cost. Seniorlink focuses on both elder and disabled adult communities where it excels in streamlining the process by which interdisciplinary care teams coordinate and provide care, with care collaboration solutions that foster greater engagement among family caregivers and patients and better outcomes for patients and providers. Seniorlink operates Caregiver Homes, an innovative Home and Community Based Services program.  Seniorlink also operates Vela, a single, centralized, HIPAA-secure communication platform for enhanced collaboration, increased efficiency, and improved outcomes.

7. Throughout its approximately two decades in business, Seniorlink has developed strong relationships with the clients it serves and the business partners with whom Seniorlink works in servicing its clients. Seniorlink exerts significant efforts and costs to protect its legitimate business interests and protect its relationships with clients and business partners that have been developed over years of effort.

8. In addition, Seniorlink has spent valuable resources identifying and developing its employee talent. For instance, Seniorlink spends a considerable amount of time and investment in training its employees, through its specialized training program, so that they can be successful employees within the Seniorlink business model. Seniorlink administers personal, intensive, and ongoing training to its employees through an established program, wherein employees gain knowledge of Seniorlink's unique techniques of client and business partner relations, marketing and solicitation to potential clients and business partners, and cultivating and maintaining relationships with existing clients and business partners.

9. Seniorlink has generated a substantial amount of goodwill by building, cultivating, supporting and maintaining relationships between its employees and its clients and business partners. The goodwill is enhanced and cultivated by Seniorlink's marketing, training and support.

10. In addition to Seniorlink's substantial investment in its relationships with clients and business partners, Seniorlink has also developed vast amounts of confidential commercial information including, but not limited to: (1) information regarding business plans, trade secrets, existing or potential transactions with third parties, financial information, intellectual property, products, services, research and development, operations, marketing, sales, pricing, and trade know-how; (2) personnel information, such as the identity and number of Seniorlink's other

employees, their compensation packages, skills, qualifications, work completed for Seniorlink, experience and abilities; and (3) non-public information regarding clients and business partners.

11. In order to protect these valuable assets, and for good and valuable consideration, Seniorlink requires each of its employees to sign restrictive covenant agreements that typically include confidentiality, non-competition and non-solicitation provisions, generally upon the commencement of such employee's employment.

## Seniorlink's Employment of Landry

12. On or about September 15, 2014, Seniorlink hired Landry as Senior Vice President of Operations.

13. The Non-Solicitation Agreement that Landry signed is attached hereto as <u>Exhibit A</u>.

14. The Non-Solicitation Agreement includes a provision prohibiting Landry from soliciting Seniorlink's employees following the termination of her employment. Such provision (Paragraph 3.3 of the agreement) states:

> He or she will not, for a period of one (1) year after termination (for any reason) of his or her employment with the Company, directly or indirectly, either alone or in association with others, hire, or approach, solicit, recruit, induce, entice or attempt to hire, or approach, solicit, recruit, induce, or entice any of the other employees, contractors, consultants or Business Partners of the Company or its Affiliates, who or which were employed by or provided services to the Company at any time during the term of the Covered Person's employment with the Company, to leave the employment of the Company or to provided services to other Persons;

15. In addition, the Non-Solicitation Agreement provides that "[i]f any restrictions described in this paragraph 3 of this Agreement are violated, then the time limitations associated with such restrictions shall be extended for an additional period of time equal to the period of

4

time during which such breach occurs, and, in the event the Company is required to seek relief from such breach before any court, then the time limitations associated with such restrictions shall be extended for a period of time equal to the pendency of such proceedings, including all appeals."

16. Landry agreed and understood that because remedies at law for violations of the Non-Solicitation Agreement would be inadequate, Seniorlink will be entitled to temporary, preliminary and permanent injunctive relief in the event of a violation. *See* Exh. A, ¶ 6.

17. The Non-Solicitation Agreement also entitles Seniorlink to recover from Landry all litigation costs and attorneys' fees incurred in any action or proceeding related to the agreement in which Seniorlink prevails in any respect. *See* Exh. A, ¶ 6.

18. Relying on Landry's agreement in this regard, Seniorlink provided Landry access to Seniorlink's confidential commercial information, including personnel information.

19. During her employment with Seniorlink, Landry utilized the training, knowledge and skills she received from Seniorlink, as well as her access to Seniorlink's confidential business plans, strategies, and back office support to cultivate, develop and maintain relationships with Seniorlink's employees, clients, and business partners for the purpose of advancing Seniorlink's business objectives.

20. During her employment with Seniorlink, Landry was exposed to confidential and proprietary information belonging to Seniorlink, including, without limitation, Seniorlink's trade secrets, marketing techniques and strategies, client lists and contact information, business partner lists and contact information, relationships and goodwill, and personnel information, all of which is the sole property of Seniorlink.

21. At all material times, Seniorlink has taken, and continues to take, reasonable efforts to maintain the confidentiality of its trade secrets and other confidential commercial information.

22. Seniorlink terminated Landry's employment in August 2018.

23. On or about September 10, 2018, Landry executed the Separation Agreement, attached hereto as Exhibit B.

24. In consideration for the generous severance package Seniorlink provided to Landry under the Separation Agreement, Landry expressly affirmed that she would "not do or say anything which would be harmful to Seniorlink or its affiliates' interests or reputation or which could reasonably be construed as critical or disparaging of Seniorlink, its affiliates or their management." *See* Exh. B, ¶ 9(c).

## Landry's Breaches

25. On or about November 28, 2018, Landry informed Seniorlink CEO Tom Riley that she was considering an opportunity with Caregiver, Inc. and explained the mission and territorial reach of the company. She also noted the CEO of Caregiver was aware of her Non-Solicitation Agreement.

26. In January 2019, Landry joined Caregiver as the President of Operations for Indiana, Tennessee and Ohio.

27. In February 2019, Seniorlink employee Melanie Morris, a key employee in Indiana who was being groomed for senior leadership, upon information and belief, applied for a position with Caregiver and participated in a lengthy interview process.

28. Landry, directly and indirectly, solicited, recruited, approached, induced, and hired a Seniorlink employee by influencing the process that resulted in the hiring of Morris.

29. Upon information and belief, in or around late March 2019, Caregiver offered Morris the role of State Director of Indiana, a new position within the company.

30. On or about April 1, 2019, Landry and Morris coordinated the "messaging" of Morris's departure to Seniorlink. Landry contacted Riley to inform him that Morris had accepted a position at Caregiver. At nearly the same time, Morris notified her manager at Seniorlink, Jennifer Trowbridge, that she was resigning.

31. On or about April 4, 2019, Landry admitted to Seniorlink Vice President of People and Culture Mary Schafer that she had "influenced" Caregiver's decision to hire and/or offer Morris a position. Landry further admitted that Morris would eventually be directly reporting to her. Landry is already Morris's indirect supervisor as Morris's current supervisor reports directly to Landry.

32. On information and belief, when Morris waivered in her decision to leave Seniorlink, Landry communicated with Morris regarding this issue, after which Morris informed Seniorlink that she was still deciding to join Caregiver.

33. On or about April 26, 2019, Seniorlink demanded through a letter from its counsel that Landry immediately affirm that she will have no involvement, direct or indirect, in the solicitation, recruitment, approaching, inducing, or hiring of a Seniorlink employee, including any attempt to influence any aspect of a process that could result in the hiring of a Seniorlink employee, until the expiration of the extended restrictive period on May 1, 2020. Although counsel to Seniorlink exchanged several letters with Landry's counsel in an attempt to resolve this matter without litigation, Landry has refused to provide Seniorlink with an unqualified affirmation of her contractual obligations.

## CLAIMS

### COUNT I
### Breach of Non-Solicitation Agreement

34. Seniorlink realleges and incorporates by reference the allegations contained in paragraphs 1 through 33 above as though fully set forth herein.

35. Landry entered into the Non-Solicitation Agreement with Seniorlink in exchange for good and valuable consideration.

36. Seniorlink has fully performed its obligations under the Non-Solicitation Agreement.

37. Landry has breached and will likely continue to breach the non-solicitation provision of the Non-Solicitation Agreement by directly and indirectly soliciting, recruiting, approaching, inducing, hiring or attempting to hire Seniorlink employees, including influencing the process that resulted in Caregiver's hiring of Morris.

38. Seniorlink has suffered and will continue to suffer significant monetary damages as a consequence of Landry's breaches.

39. Seniorlink seeks preliminary and permanent injunctive relief to enjoin and restrain Landry from engaging in any further conduct that constitutes a breach of the Non-Solicitation Agreement. Unless such conduct is enjoined, it will cause great and irreparable injury to Seniorlink's business, harming the relationships between Seniorlink and its clients, business partners, and employees.

40. Seniorlink is likely to succeed on the merits of its claims.

41. Seniorlink has no adequate remedy at law, and will suffer substantial and immediate irreparable harm unless Landry is enjoined as requested.

42. Greater injury will be inflicted upon Seniorlink by the denial of this relief than will be inflicted upon Landry by the granting of such relief.

43. In addition to the injunctive relief to which Seniorlink is entitled, Landry's breaches entitle Seniorlink to recover damages suffered, and to an award of attorneys' fees and costs incurred by bringing this action.

## COUNT II
**Breach of Separation Agreement**

44. Seniorlink realleges and incorporates by reference the allegations contained in paragraphs 1 through 43 above as though fully set forth herein.

45. Landry entered into the Separation Agreement with Seniorlink in exchange for good and valuable consideration.

46. Seniorlink has fully performed its obligations under the Separation Agreement.

47. Landry has breached and will likely continue to breach paragraph 9(c) of the Separation Agreement by directly and indirectly soliciting, recruiting, approaching, inducing, hiring or attempting to hire Seniorlink employees, including influencing the process that resulted in Caregiver's hiring of Morris.

48. Seniorlink has suffered and will continue to suffer significant monetary damages as a consequence of Landry's breaches.

## PRAYER FOR RELIEF

**WHEREFORE,** Seniorlink respectfully requests that the Court grant the following relief:

1. Enter judgment for Seniorlink;

2. Enter a preliminary and permanent injunction enjoining Landry from having any involvement, direct or indirect, in the soliciting, recruiting, approaching, inducing, or hiring of a Seniorlink employee, including any attempt to influence any aspect of a

process that could result in the hiring of a Seniorlink employee, until the expiration of the extended restrictive period;

3. Award Seniorlink damages in an amount to be determined at trial;

4. Award Seniorlink costs, reasonable attorneys' fees and interest; and

5. Award Seniorlink such other and further relief as the Court deems just and proper.

Respectfully submitted,

SENIORLINK INCORPORATED

By its attorneys,

/s/ *Erik J. Winton*
Erik J. Winton, BBO #600743
wintone@jacksonlewis.com
Benjamin R. Davis, BBO#673017
Benjamin.davis@jacksonlewis.com
JACKSON LEWIS, PC
75 Park Plaza
Boston, MA 02116
(617) 367-0025

Dated:  June 5, 2019