UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| SENIORLINK INCORPORATED, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 19-cv-11248-DJC |
| Plaintiff, | | |
| v. | | |
| BETH LANDRY, | | |
| Defendant. | | |

## MEMORANDUM AND ORDER

**CASPER, J.** February 13, 2020

**I. Introduction**

Plaintiff Seniorlink Incorporated ("Seniorlink") has sued Defendant Beth Landry ("Landry") seeking injunctive relief and damages in connection with Landry's alleged violation of both a Confidentiality, Non-Competition, Non-Solicitation, and Inventions Agreement (the "Non-Solicitation Agreement") (Court I) and a Separation Agreement and Release (the "Separation Agreement") (Court II). Id. Landry asserts counterclaims against Seniorlink alleging breach of the Non-Solicitation Agreement (Count I), breach of the Separation Agreement (Count II), breach of a Stock Option Agreement (Count III), breach of fiduciary duty (Count IV) and intentional interference with employment relationships (Count V). D. 7. Landry now moves to amend her counterclaim, alleging claims of handicap discrimination under Mass. Gen. L. c. 151B (Count VI), sex discrimination in violation of Mass. Gen. L. c. 151B (Count VII), disability discrimination under the Americans with Disabilities Act ("ADA") (Count VIII) and sex discrimination in

1

violation of Title VII (Count IX). D. 16. For the following reasons, the Court DENIES Landry's motion to amend, D. 16.

## II.     Factual Background

Taking all factual allegations in the counterclaim as true, as the Court must at this juncture, the Court considers the following alleged facts. On or about May 28, 2014, Landry began to work for Seniorlink as a consultant. D. 16-2 ¶ 5. In August 2014, Landry accepted an offer to work at Seniorlink as the Senior Vice President of Operations. Id. ¶ 6. Two years after the start of her employment at Seniorlink, Landry was required to sign the Non-Solicitation Agreement. Id. ¶ 13. At some point in 2017, Landry was diagnosed with polymyalgia rheumatica, a chronic disease that causes abnormal levels of inflammation, shoulder and hip pain. Id ¶¶ 15, 18. Landry had difficulty standing or sitting without assistance, walking up the jetway off an aircraft and lifting her shoulders. Id. ¶¶ 23-26. These symptoms worsened in late August/early September 2017. Id. ¶ 17. "Around August or September 2017," Landry met with Seniorlink's Chief Executive Officer Tom Riley, to discuss her medical issues. Id. ¶ 27. The following morning, Landry's "direct report," Bob Creamer, and Riley had a lengthy meeting. Id. ¶ 29. "Immediately thereafter," Creamer informed Landry that she should begin to look for outside employment and develop a six-month transition plan for her departure. Id. ¶ 30. The following week, Landry spoke with Riley about the proposed transition and how it would allow Landry to begin looking for other work. Id. ¶¶ 32-33. In summer 2018, Landry suffered an acute shoulder tear. Id. ¶¶ 37, 38. On August 8, 2018, Landry met with Human Resources Director Mary Schaefer. Id. ¶ 43. Landry specifically asked about the Family Medical Leave Act and was told by Schaefer that she would not want that. Id. ¶ 44. After Landry informed Riley about her shoulder injury, he responded that it was "'the last thing you need right now.'" Id. ¶ 45. Around the same time, the Executive Vice

President, Lois Simon, told Landry that Riley thought she was struggling. Id. ¶ 46. Riley informed Landry that her unemployment would end, effective August 31, 2018. Id. ¶ 47.

Prior to her departure in August 2018, Landry was offered a severance package as part of the Separation Agreement. Id. ¶ 48. As alleged by Landry, Seniorlink offered her a less generous severance package than the one it offered to a male employee. Id. ¶ 49.

The Separation Agreement provided Landry with severance pay, extension of healthcare benefits, professional outplacement benefits, payment of unearned and unused PTO and extension of the date to exercise her stock options from November 29, 2018 to March 31, 2019. D. 1-2 ¶ 1-8. In consideration of same, Landry agreed to:

> release and forever discharge Seniorlink. . . from claims liabilities, contracts, agreements, debts or obligations of any kind whatsoever. . . from the beginning of time to the date hereof at common law or under any statute, regulation, or law, whether federal or state, including but not limited to Title VII of the Civil Rights Act of 1964, as amended, the Equal Pay Act, as amended, the Rehabilitation Act of 1973, as amended, the Americans with Disabilities Act, as amended. . . , [and] the Massachusetts Law Against Discrimination, G.L. c. 151B." Id. ¶ 9.

In January 2019, Landry accepted a position as the President of Operations for Caregiver, Inc. D. 16-2 ¶ 54. In March 2019, Landry remitted a check for $258,668.50 to purchase the stock options from Seniorlink. Id. ¶ 56. On April 1, 2019, Landry informed Riley that Caregiver had offered a position to Melanie Morris, a former Seniorlink employee. Id. ¶ 62. On April 10, 2019, Landry received a letter from Seniorlink's counsel that accused her of breaching the terms of the Non-Solicitation Agreement. Id. ¶ 64. On April 26, 2019, Seniorlink's counsel informed Landry that her accumulated stock options terminated as a result of her alleged breach of the terms of the Non-Solicitation Agreement. Id. ¶ 65. This letter included a refund of the money she had remitted to purchase the stock options. Id. ¶ 66.

**III.     Procedural History**

On June 5, 2019, Seniorlink filed the complaint against Landry. D. 1. On July 3, 2019, Landry filed an answer and counterclaim. D. 7. Landry has now moved to amend her counterclaim to add discrimination claims. D. 16. The Court heard oral argument on the motion and took the matter under advisement. D. 25.

**IV.     Standard of Review**

Fed. R. Civ. P. 15(a) provides that the Court should "freely give leave when justice so requires" to amend pleadings. Such leave should be freely given "unless the amendment 'would be futile, or reward, *inter alia*, undue or intended delay.'" Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004) (quoting Fed. R. Civ. P. 15(a)(2) and Resolution Trust Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994)). To evaluate futility, the Court determines if the amended complaint fails to state a claim upon which relief could be granted; i.e., the same standard used by the Court to evaluate a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Hatch v. Dep't for Children, Youth & Their Families, 274 F.3d 12, 19 (1st Cir. 2001).

**V.     Discussion**

As discussed below, Landry's counterclaims against Seniorlink are futile because she waived these claims in the Separation Agreement and they are time-barred.

   **A.     Landry Waived Her Claims in The Separation Agreement**

Landry's amended counterclaims are futile because prior to departing from Seniorlink, Landry executed the Separation Agreement releasing and discharging Seniorlink from all claims and liabilities, including any potential discrimination claims under federal and state law. D. 1-2 ¶ 9.

Landry argues that this Court should not enforce the general release section of the Separation Agreement because Seniorlink unilaterally breached the Separation Agreement, D. 1-2, when it refused Landry's stock option purchase. D. 16-1 at 5–8. Landry relies upon <u>Lantor, Inc. v. Ellis</u>, No. CIV. A. 98-01064, 1998 WL 726502 at *9 (Mass. Super. Ct. Oct. 24, 1998) where the court held that a non-compete agreement was unenforceable because during the defendant's employment, the employer materially breached its employment agreement when it unilaterally changed defendant's terms of employment by imposing a new bonus scheme and reserving the right to modify it and any future bonus scheme without limitations. <u>Id.</u>

<u>Lantor</u> is inapposite here since, even as alleged, Seniorlink has not violated the provision of the Separation Agreement. The Separation Agreement did not provide for the stock options, it only extended the deadline for Landry to exercise her stock options from November 29, 2018 to March 31, 2019. D. 1-2 ¶ 7. The parties' separate Amended and Restated 2009 Stock Option and Stock Incentive Plan provided Landry with stock options. <u>Compare</u> D. 1-2 ¶ 7 <u>with</u> D. 7-1 at 9-20. Accordingly, unlike in <u>Lantor</u>, Landry has not pled a material breach by Seniorlink of the Separation Agreement.

Even assuming *arguendo* that Seniorlink had breached the Separation Agreement when it terminated Landry's right to purchase her stock options, this breach would not invalidate the entirety of the Separation Agreement. D. 17 at 6; <u>see</u> <u>Friedman v. Wang</u>, No. 1484-cv-911BLS2, 2019 WL 1430082, at *4 (Mass. Super. Ct. Mar. 7, 2019) (holding that defendant's failure to pay plaintiff, while a breach of contract, was not a failure of consideration warranting recession because defendant's promise to make the payment was sufficient consideration to make the settlement agreement a binding contract). That is, even if Seniorlink had breached the Separation Agreement, such a breach would not warrant rescission of the entire contract. <u>See id.</u> This is

particularly true here, where the extension of the stock options exercise deadline was only one part of consideration for Landry's waiver of claims in the Separation Agreement. See D. 1-2 ¶¶ 1-8. Accordingly, the general release in the Separation Agreement remains enforceable and Landry's claims are waived.

**B.      Landry's Claims Are Time-Barred**

Even if Landry's general release in the Separation Agreement was not enforceable, Landry's amended counterclaims are still futile because they are time-barred. Any complaint must be filed with MCAD or the EEOC within 300 days after the alleged act of discrimination. Mass. Gen. L. c. 151b, §5; 42 U.S.C. § 2000e-5(e)(1). Landry filed her complaint with MCAD on June 24, 2019. D 16-2 ¶ 70. Thus, any allegedly discriminatory conduct must have occurred after August 28, 2018. D. 17 at 7. Even as alleged, none of the allegedly discriminatory conduct occurred after this date. Landry informed her manager about her medical issues in July, August and September 2017 and on August 8, 2018 she was given an allegedly less favorable severance package than a male colleague and informed that her employment would end effective August 31, 2018. D. 16-2 at ¶¶ 16, 27-30, 40, 43-47.

Landry argues that her claims are not time barred because her administrative complaint was filed within 300 days of her discharge from employment on August 31, 2018. D. 16-1 at 8. Even assuming Landry alleges that her termination itself is discriminatory, the statute of limitations began to run when she received notice of her termination, not when her termination became effective. See Thomas v. Eastman Kodak Co., 183 F.3d 38, 55 (1st Cir. 1999) (holding that the statute of limitations for plaintiff's discrimination claim began when she received notice of her layoff); see also Admczyk v. Augat, Inc., 52 Mass. App. Ct. 717, 721 (2011) (concluding that the limitations period commenced on the date plaintiffs were notified that their employment

would be terminated, not on the actual termination date). Here, the statute of limitations period covers only as far back as August 28, 2018, which does not cover the August 8, 2018 notice of termination.

Contrary to Landry's contention, the continuing violation doctrine does not save her claims. D. 16-1 at 9. "The continuing violation doctrine is an equitable exception that allows an employee to seek damages for otherwise time-barred allegations if they are deemed part of an ongoing series of discriminatory acts and there is 'some violation within the statute of limitations period that anchors the earlier claims.'" O'Rourke v. City of Providence, 235 F.3d 713, 730 (1st Cir. 2001) (internal citation omitted). The continuing violation doctrine applies when: (1) at least one discriminatory act occurred within the statute of limitations period; (2) the alleged timely discriminatory acts have a substantial relationship to the alleged untimely discriminatory acts and (3) earlier violations outside the statutory limitations period did not trigger the employee's awareness and duty to assert her rights, "i.e. that [the employee] could not have formed reasonable belief at the time the employment actions occurred that they were discriminatory." Ocean Spray Cranberries, Inc. v. Massachusetts Comm'n Against Discrimination, 441 Mass. 632, 643 (2004).

Landry asserts that the continuing violation doctrine is applicable because Seniorlink failed to grant her a reasonable accommodation, coerced her resignation and revoked her vested stock options. Id. at 10. The continuing violation, however, is not applicable to "discrete acts" of discrimination that occur on a "particular day." Ayala v. Shinseki, 780 F.3d 52, 57 (1st Cir. 2015) (distinguishing between discrete acts on a particular date that are discriminatory as opposed to "claims that cannot be said to occur on a particular day and that by their very nature require repeated conduct to establish an actionable claim"). A denial of an accommodation is a separate and discrete act. Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 130 (1st Cir. 2009). The same is

true with the coerced resignation that Landry alleges here. See Rivera v. Puerto Rico Aqueduct and Sewers Authority, 331 F.3d 183, 188 (1st Cir. 2003) (holding that "discrete acts such as termination, failure to promote, denial of transfer or refusal to hire constitute a separate actionable unlawful employment practice"). Also, to the extent that Landry now suggests that the denial of her stock option purchase was discriminatory, D. 16-1 at 8, such act was a discrete act that, even as alleged, occurred on a specific date in 2019. D. 16-2 at ¶ 64-65. Accordingly, the continuing violation doctrine is not applicable.

Moreover, these allegedly discriminatory acts by Seniorlink fail the three-part standard. First, Landry has not identified a discriminatory act that occurred within the statute of limitations period. See Mack v. Great Atlantic and Pacific Tea Co., Inc., 871 F.2d 179, 183 (1st Cir. 1989) (stating that under the continuing violation doctrine, plaintiff still retains "the burden of demonstrating that *some* discriminatory act transpired within the appropriate time frame") (emphasis in original). As noted above, D. 16-2 at ¶¶ 16, 27-30, 40, 43-47, none of the alleged discriminatory acts occurred within the limitations period. To the extent that Landry now points to Seniorlink's decision on April 26, 2019 to terminate her right to exercise her stock options, id. ¶ 64-65, as an anchoring event, there is no allegation that that action was a discriminatory act.

Second, Landry has failed to show that any timely discriminatory act has a substantial relationship to an untimely discriminatory act. As addressed above, the alleged discriminatory acts are untimely and she has not related them to any discriminatory act that occurred within the limitations period.

Finally, Landry has failed to show that she was unaware of the discrimination or unable to form a reasonable belief about alleged discrimination. See Ocean Spray Cranberries, Inc., 441 Mass. at 646. That is true as to each of the discrete, alleged acts of discrimination. Specifically,

as to her allegation about Seniorlink's failure to provide reasonable accommodation, even assuming that Landry made a request for reasonable accommodation here, when an employer responds to such a request with unequivocal inaction, an employee has adequate notice that her request is not going to be accommodated. Id. at 646–47. Landry stated that on multiple occasions, prior to the limitations period, she met with Seniorlink management to discuss her medical issues and they did not mention providing any kind of accommodation. D. 16-2 ¶¶ 35, 42. Seniorlink's alleged inaction, therefore, was sufficient to make Landry aware that she would not be provided with a such accommodation at the time.

## VI. Conclusion

For the foregoing reasons, the Court DENIES Landry's motion for leave to amend her counterclaim, D. 16.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge